# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2495

THOMAS MATTSON,

*Plaintiff-Appellant,*

v.

CATERPILLAR, INC.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 7414—**Michael T. Mason**, *Magistrate Judge.*

———————

ARGUED JANUARY 14, 2004—DECIDED MARCH 4, 2004

———————

Before FLAUM, *Chief Judge*, and POSNER and DIANE P. WOOD, *Circuit Judges*.

FLAUM, *Chief Judge*. In 2001, Thomas Mattson filed suit under Title VII of the Civil Rights Act of 1964, alleging that his employer, Caterpillar, Inc., retaliated against him in response to a charge of sexual harassment that he had filed with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). The district court granted Caterpillar summary judgment, and Mattson now appeals. For the reasons stated herein, we affirm.

## I. BACKGROUND

In 1999, Thomas Mattson worked as an electrician in the engine test cell area of Caterpillar's manufacturing facility in Mossville, Illinois. The test cell area is quite noisy, and as a result employees are required to wear earplugs and must stand in close proximity to one another to converse. One of Mattson's supervisors in the test cell area was production supervisor Beth Cone. Cone was responsible for contacting electricians like Mattson whenever there were maintenance problems. Mattson and senior electrician Paul Hart were generally uncooperative when contacted by Cone, and they resisted taking orders from her.

During this time period, Cone and Mattson had several encounters. On one occasion, Cone observed Mattson sleeping at work, and reported this to Mattson's direct supervisor. In April 1999, Mattson and Hart left a test cell unattended when they were in the process of repairing it. When Cone challenged this disregard of proper safety procedures, Hart became angry and stepped toward Cone, which prompted Mattson to restrain him. Hart was subsequently transferred, leaving Mattson as the electrician dealing most directly with Cone.

Approximately five days later, Mattson and two co-workers told a maintenance manager that they were concerned about physical contact with Cone. The entirety of Mattson's complaint consisted of one instance where one of Cone's breasts had touched his arm during a conversation in the test cell area, and one instance where Cone had reached around him to get a clipboard but had not touched him. When Caterpillar's EEO Coordinator Lynda White later interviewed Mattson about the incident where Cone's breast allegedly touched Mattson's arm, Mattson stated that he did not know whether Cone had touched him in a suggestive way and that he did not believe that she was attracted to him. Mattson further stated that the contact

may have been inadvertent. Based upon this, White concluded that Mattson's complaint was without merit. Caterpillar then issued Mattson a warning letter which stated that making false accusations of sexual harassment could lead to disciplinary action and discharge. However, Caterpillar also counseled Cone to be careful of how closely she stood to people.

Three months later, Mattson filed a charge of sexual harassment with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission based upon the aforementioned incidents with Cone. Caterpillar's new EEO Coordinator Christine Troglio then began another internal investigation into the charges. At this point, Mattson's co-worker, Chuck Hollis, came forward with new information. Hollis submitted a signed affidavit in which he stated that Cone's breast did not touch Mattson. Hollis further stated that Mattson had told him that Mattson's goal was to get Cone "out of here any way possible." After receiving this information, Caterpillar concluded that Mattson's charges against Cone were made in bad faith in an attempt to retaliate against her. Caterpillar thereafter decided to discharge Mattson, and contends that the discharge was due to Mattson's dishonesty and retaliatory conduct.

Mattson filed suit against Caterpillar in 2001, alleging that his discharge violated Title VII of the Civil Rights Act of 1964. The parties filed cross motions for summary judgment, and the district court found that Mattson had failed to offer direct evidence of discrimination and could not prove discrimination through indirect evidence because Caterpillar had articulated a legitimate, non-discriminatory reason for Mattson's discharge. The district court therefore granted summary judgment in favor of Caterpillar, and Mattson now appeals.

## II. Discussion

We review a district court's grant of summary judgment *de novo*, viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. *See Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1000 (7th Cir. 2000). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c).

In this case, the district court found that Mattson was unable to prove retaliatory discharge through either the direct or indirect methods of proof. Under the direct method, the plaintiff must provide either direct evidence or circumstantial evidence that shows that the employer acted based on prohibited animus. *See Venturelli v. ARC Comty. Servs., Inc.*, 350 F.3d 592, 599 (7th Cir. 2003). Under the indirect method, the plaintiff must provide evidence that "after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the plaintiff provides this evidence, the defendant must then present evidence of a non-invidious reason for the adverse action. Once the defendant presents a legitimate, non-invidious reason for the adverse action, the burden shifts back to the plaintiff to prove that the defendant's reason is pretextual. *See Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). Both methods of proof require that the plaintiff show that he or she was retaliated against after engaging in activity protected under Title VII. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

We therefore begin by analyzing whether Mattson's activity was protected under Title VII. It is clear that

Mattson was not sexually harassed when Cone's breast allegedly brushed against his arm on a single occasion or when Cone reached around Mattson without touching him. *See*, *e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (stating that "sexual harassment is actionable under Title VII only if it is 'so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment" ' "); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (stating that simple teasing, "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' "). It is also clear that no reasonable person could believe this constituted sexual harassment. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998) (holding that no reasonable person could believe that a poke to the buttocks constitutes sexual harassment because such conduct is too "tepid or intermittent or equivocal"). Finally, even Mattson himself did not believe that he had been sexually harassed, as is evidenced by his admissions that he did not believe Cone was attracted to him and that the touch could have been inadvertent, as well as his statements to co-worker Chuck Hollis that he wanted to get Cone "out of here any way possible." Thus, the sexual harassment charge Mattson filed with the IDHR and EEOC was both objectively and subjectively unreasonable, as well as made with the bad faith purpose of retaliating against his female supervisor.

Still, Mattson insists that Title VII protects those who file charges that are unreasonable, false, and even malicious and defamatory. Mattson structures his argument by drawing a distinction between the "opposition clause" and "participation clause" of Title VII. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) provides that

> It shall be an unlawful employment practice for an employer to discriminate against [an employee] . . . because [the employee] has opposed any practice made an

> unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Mattson asserts that the opposition clause, which protects an employee who opposes "any practice made an unlawful employment practice by this subchapter," may include a good faith or reasonableness requirement, but that the participation clause, which protects an employee who "participated in any manner in an investigation" does not require either good faith or reasonableness for the employee to receive Title VII protection.

Mattson finds support for this interpretation of Title VII in dicta from several cases. *See, e.g.*, *Johnson v. University of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000); *Womack v. Munson*, 619 F.2d 1292, 1298 (8th Cir. 1980); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (stating that under the participation clause, protection "is not lost if the employee is wrong on the merits of the charge, nor is protection lost if the contents of the charge are malicious and defamatory as well as wrong" (internal citations omitted)); *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir. 1969). It is important to note, however, that none of these cases actually involved a plaintiff who filed unreasonable charges, let alone charges that were both unreasonable and made in bad faith.

The case that most supports Mattson's argument is *Pettway*, 411 F.2d at 1003. In *Pettway*, an employer fired an employee for filing a letter with the EEOC which the employer claimed contained false and malicious accusations. The employee's claim in *Pettway*, however, is distinguishable from Mattson's claim. *See id.* The Fifth Circuit agreed that the *Pettway* letter was false, but concluded that there was no evidence that it had been motivated by malice. *Id.* at 1004. In fact, the EEOC determined that the charge

was not made maliciously, but rather was made so that the plaintiff could receive a hearing on his discrimination charges. *Id.* The *Pettway* charge also did not involve a claim that was baseless on its face. If true, the charges against the employer would certainly have stated a claim of discrimination. *See id.* at 1002 n.5 (The letter stated that the employer had threatened to fire 75% of the African-American employees). This stands in stark contrast to Mattson's charges, which as already discussed did not objectively state a claim of sexual harassment. Furthermore, there is evidence that Mattson's claim was filed maliciously. Thus, *Pettway* does not persuade this Court that employees should receive Title VII protection for filing unreasonable charges in bad faith.

Rather, this Court has consistently stated that utterly baseless claims do not receive protection under Title VII. *See*, *e.g.*, *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (holding that to win a retaliation claim, it is required that the employee "reasonably believed in good faith that the practice she opposed violated Title VII" and that it "is improper to retaliate against anyone for claiming a violation of Title VII unless that claim is 'completely groundless' "); *McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996) (stating that it "is improper to retaliate for the filing of a claim of violation of Title VII even if the claim does not have merit—provided it is not completely groundless. There is nothing wrong with disciplining an employee for filing frivolous complaints" (internal citations omitted)); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) (stating that plaintiffs need not succeed on retaliatory discharge claims, but that they must have "a reasonable belief" that they are challenging conduct that violates Title VII and that they therefore cannot assert claims that are "utterly baseless"). The purpose of requiring that plaintiffs reasonably believe in good faith that they have suffered discrimination is clear. Title VII was designed to protect the

rights of employees who in good faith protest the discrimi-
nation they believe they have suffered and to ensure that
such employees remain free from reprisals or retaliatory
conduct. Title VII was not designed to "arm employees with
a tactical coercive weapon" under which employees can
make baseless claims simply to "advance their own retalia-
tory motives and strategies." *See Spadola v. New York City
Transit Auth.*, 242 F. Supp. 2d 284, 292 (S.D.N.Y. 2003).
Although our Court has not explicitly held that the "not
utterly baseless" standard applies to both opposition clause
and participation clause cases, it also has not stated that
the standard is limited to opposition clause cases.

We believe that the same threshold standard should
apply to both opposition and participation clause cases.
That is, the claims must not be utterly baseless. Were we to
adopt a different standard, an employee could immunize his
unreasonable and malicious internal complaints simply by
filing a discrimination complaint with a government agency.
Similarly, an employee could assure himself unlimited
tenure by filing continuous complaints with the government
agency if he fears that his employer will discover his
duplicitous behavior at the workplace. This is not an
unrealistic parade of horribles—it is, after all, what may
have occurred in this case. Mattson filed an internal
complaint that was baseless. Had Caterpillar immediately
discovered the evidence that proved Mattson acted mali-
ciously, both parties agree that Mattson could have been
discharged at that time. However, Mattson then filed the
charge with the IDHR and EEOC and now argues that he
cannot be terminated even though Caterpillar discovered
that both charges were filed maliciously. If we were to adopt
Mattson's arguments, it would encourage the abuse of Title
VII and the proceedings that it establishes.

Our holding is in accord with *Johnson v. University of
Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000), and *Wideman
v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir.

1998), both of which left open the possibility that the participation clause may include a good faith and reasonableness requirement. While *Johnson* stated in dicta that an employee may file a charge that is malicious and still receive participation clause protection, the court still inquired into the good faith basis for the plaintiff's complaint before determining whether the plaintiff was protected under Title VII. *See* 215 F.3d at 582 (stating that the plaintiff "could have reasonably believed that he had a viable discrimination claim"). *Wideman* specifically discussed the possibility that retaliation claims brought under the participation clause should not be distinguished from those brought under the opposition clause and that both may include a good faith, reasonableness requirement. *See* 141 F.3d at 1454. However, because Wideman did have a good faith, reasonable basis for filing her charge, the court did not have to decide whether protection from retaliation under the participation clause is conditioned by a good faith, reasonableness requirement. *Id.* at 1455.

Our holding is also consistent with the Supreme Court's most recent decision on this issue. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001). In *Breeden*, the plaintiff's supervisor read aloud from a personnel file that one employee had once commented to a co-worker, "I hear making love to you is like making love to the Grand Canyon." *Id.* at 269. After the plaintiff complained about the reading of this statement, she was punished for her complaints. The Ninth Circuit applied its reasonableness test and concluded that the plaintiff's complaints were protected activity under Title VII because they were made with a reasonable, good faith belief that the incident constituted unlawful sexual harassment. However, the Supreme Court reversed, holding that "no one could reasonably believe that the incident recounted above violated Title VII." *Id.* at 270. The Supreme Court based its decision on the fact that "offhand comments, and isolated incidents (unless ex-

tremely serious) will not amount" to sexual harassment, as well as the fact that the plaintiff had conceded that it did not bother or upset her to read the statement in the file herself. *Id.* at 271. The Supreme Court therefore concluded that the plaintiff's complaint did not qualify as protected activity under Title VII.

Mattson argues that *Breeden* cannot be read to support a good faith, reasonableness requirement under the participation clause, because the Supreme Court applied this standard only to the opposition clause conduct in that case. While we acknowledge that the Supreme Court did not apply the reasonableness requirement in a participation clause context, the Supreme Court also did not hold that the reasonableness requirement only applies to the opposition clause. Because the Supreme Court did not distinguish between opposition and participation claims, we also decline to do so and hold that the good faith, reasonableness requirement applies to all Title VII claims.

We emphasize that this decision sets a low bar for receiving Title VII protection. Protection is not lost simply because an employee is mistaken on the merits of his or her charge. Protection also is not lost if an employee drafts a complaint as best he or she can but does not state an effective legal claim. *Cf. Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) (expressing concern that if protection turns on the merits of an employee's claim, participation under Title VII "would be severely chilled"); *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005 (5th Cir. 1969) (explaining that the participation clause must offer broad protection because individuals draft charges as best they can "without expert legal advice" in challenging "huge industrial employer[s] in this modern day David and Goliath confrontation"). However, the unique circumstances of this case present us with a complaint that is not only unreasonable and meritless, but also motivated by bad faith. Against this factual backdrop, we find that

Mattson's claim is not deserving of protection under the participation clause of Title VII. The paucity of case law on point illustrates the rarity of such claims as well as the limited nature of our holding.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Caterpillar.


A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*