COLLOTON, Circuit Judge,
concurring in part and dissenting in part.
I agree that the district court correctly granted summary judgment dismissing Randy Gilooly’s claims alleging sex discrimination based on a hostile work environment and disparate treatment. However, given the court’s conclusion, with which I agree, that false statements made in an investigation of alleged sex discrimination can be a basis for dismissal of an employee (and thus are not protected “opposition” or “participation” in a sexual harassment investigation), the district court’s dismissal of Gilooly’s retaliation claim also should be affirmed. The Missouri Department of Health and Senior Services (DHSS) indisputably terminated Gilooly based on a reasonable, good faith belief that Gilooly filed false sexual harassment charges, and then gave false testimony in relation to those charges. As such, the termination did not constitute discrimination against Gilooly because of opposition or participation that is protected under Title VII.
Title VII makes it an “unlawful employment practice” for an employer “to discriminate” against an employee “[1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.” 42 U.S.C. § 2000e-3. The two clauses of this section typically are described, respectively, as the “opposition clause” and the “participation clause.” In considering a claim of unlawful retaliation, it is important to determine whether the conduct of the employee at issue constitutes “opposition” under the first clause, “participation” under the second clause, or activity not covered at all, because the analysis of an employ *742 er’s action may differ depending on the nature of the employee’s conduct.
The opposition clause protects an employee against discrimination because he has “opposed” any practice “made an unlawful employment practice” by Title VII. Our court, like other circuits, has interpreted this provision more broadly than its plain language might suggest. The clause encompasses actions that “oppose” employment practices that are unlawful, but also includes opposition to practices that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful. EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir.1998); Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir.1995). Our court followed a decision of the Seventh Circuit, which acknowledged that a literal reading of the opposition clause would result in a narrower scope, but which concluded that broader protection was consonant with the true intent of Congress and necessary to further the central purpose of Title VII. Berg v. LaCrosse Cooler Co., 612 F.2d 1041, 1045-46 (7th Cir.1980). The Supreme Court recently noted this interpretation, but had no occasion to rule on whether it was proper. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam).
The text of the “participation clause,” by contrast, does not connect the protected activity to the unlawfulness of any employment practice. In one respect, therefore, the plain language of the clause sweeps more broadly than the opposition clause, forbidding discrimination because of “participation in any manner” in an investigation under Title VII. At the same time, however, the clause protects only participation “under this subchapter,” so participation in an employer’s internal investigation that is independent of the “subchapter,” i.e., not pursuant to an investigation by the EEOC or its designee, is not covered. Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir.1990); see also Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir.1999). When the employee is participating in an EEOC investigation, however, the broad formulation of the clause has led some courts to say that it protects even false and malicious allegations, or the filing of frivolous complaints. E.g., Pettway v. Am. Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir.1969); Proulx v. Citibank, N.A., 659 F.Supp. 972, 977-78 (S.D.N.Y.1987); see also Johnson v. Univ. of Cincinnati, 215 F.3d 561, 582 (6th Cir.2000) (dicta); Womack v. Munson, 619 F.2d 1292, 1298 & n. 10 (8th Cir.1980) (dicta).
The majority, ante, at 740 - 741, rejects this “extreme level of protection for untruth,” EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1175 (11th Cir.2000), and although there is a respectable textual argument for the contrary view, I ultimately agree with the court’s conclusion. The court implicitly follows the reasoning of the Seventh Circuit in Mattson v. Caterpillar, Inc., 359 F.3d 885 (7th Cir.2004), which held that “the same threshold standard should apply to both opposition and participation clauses,” id. at 891 — that is, “utterly baseless claims do not receive protection under Title VII.” Id. at 890. Rather, an employee must “reasonably believe in good faith” that he has suffered discrimination before his “participation” falls within the scope of § 2000e-3. Id. at 890. Whatever might be the plain meaning of the participation clause standing alone, we must interpret it today in the context of an opposition clause that has been read to protect reasonable, good faith opposition to an employer’s practices, but not false allegations. As the Mattson court observed, if we were now to adopt a different standard for the participation clause, “an employee *743 could immunize his unreasonable and malicious internal complaints simply by filing a discrimination complaint with a government agency,” and “an employee could assure himself unlimited tenure by filing continuous complaints with the government agency if he fears that his employer will discover his duplicitous behavior at the workplace.” Id. at 891.
The question then arises, who decides whether the employee has made false and malicious allegations? With respect to acts analyzed only under the opposition clause, it has been recognized that an employer may properly carry out a termination based on the employer’s good faith belief that an employee lied in an internal investigation.[3] As the Eleventh Circuit explained, “[w]hen the resulting employer’s investigation (not tied to the government) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions — that is, to accept one as true and to reject one as fictitious — at least, as long as the choice is an honest choice.” Total Sys. Servs., 221 F.3d at 1176. This is a business judgment by the employer, and “[i]n the workaday world, not every personnel decision involving a false statement (or a cover-up) has to be treated as something like a trial for perjury.” Id.; see also Wilson v. UT Health Center, 973 F.2d 1263, 1268 (5th Cir.1992) (stating that Title VII does not “prevent an employer from making a disciplinary decision based on its evaluation of the veracity of an employee’s allegations that concern an activity that Title VII protects, such as complaints about sexual harassment”).
In terms of the text of the statute, an employee who makes false allegations has not “opposed any practice made an unlawful employment practice,” because only good faith, reasonable opposition is protected by the statute. Evans, 65 F.3d at 100; cf. Breeden, 532 U.S. at 270, 121 S.Ct. 1508. It follows, then, that a company that terminates an employee based on a good faith belief that he made false allegations has not discriminated against the employee “because he has opposed any practice made an unlawful employment practice.” Rather, the employer has acted because it believed that the employee made false and malicious allegations, and thus did not believe that the employee was engaged . in protected “opposition.” Of course, if the employer has no good reason to conclude that the employee’s allegations were knowingly false and malicious, then there will be a genuine issue as to whether the employer’s stated reason for termination is a pretext for unlawful retaliation for protected activity. But whether a judge or jury might later disagree with the employer’s good faith conclusion about falsity is not dispositive, because whether the employer discriminated unlawfully depends on the employer’s beliefs and motivation. See Kipp v. Mo. Highway & Transp. Comm’n, 280 F.3d 893, 897 (8th Cir.2002) (holding that Title VII plaintiff must show that “retaliatory motive played a part in the adverse employment action”) (internal quotation omitted); Scroggins v. Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir.2000) (holding that the “relevant inqui *744 ry” in retaliation case is whether the employer believed the employee was guilty of the conduct justifying discharge) (internal quotation omitted); Scott v. County of Ramsey, 180 F.3d 913, 917 (8th Cir.1999) (“[T]he ultimate burden of persuasion remains with the plaintiff to show that the termination was motivated by intentional retaliation”).
The motivation of the employer also should be determinative with respect to disciplinary actions taken based on statements in an investigation governed by the participation clause.[4] Once it is acknowledged, as does the majority, that an employee who makes knowingly false allegations in an investigation has not “participated” in a way that is protected under § 2000e-3, then the statute gives no indication that a court should treat the question of the employer’s motive differently under the opposition and participation clauses. Both clauses prohibit discrimination “because” an employee has engaged in protected activity. Once the scope of “opposition” and “participation” has been defined to exclude false and malicious allegations, an employer acting on that basis does not discipline the employee “because he has opposed” or “because he has participated” in a way that is protected by the statute.[5] The employer is motivated by its conclusion that the employee committed unprotected misconduct, not by the fact that an employee engaged in protected activity.
In Gilooly’s case, there is no genuine dispute that the DHSS terminated Gilooly based on a reasonable, good faith belief that he made false statements both in an internal investigation and in connection with a proceeding before the Missouri Commission on Human Rights, together with his previous inappropriate involvement in the case of a mentally disturbed client, which led to a suspension. The DHSS explained to Gilooly that “[e]very-one is entitled to their opinions and perceptions, but to file false sexual harassment complaints against people with whom you had consensual sexual relations, and then to provide false statements throughout the investigative and hearing process is reprehensible.” (Appellant’s App. at 94). Gilooly’s termination was upheld by the Personnel Advisory Board of the State of Missouri, which concluded that Gilooly “lied during his second grievance investigation,” that he “lied as an offensive tactic to intimidate” two female co-workers, and to “try to get his suspension rescinded.” (Appellee’s App. at 147).[6] The Board *745 found that Gilooly “lied about matters very serious and deeply personal to others,” and that the DHSS “need not be forced to employ in such a sensitive position someone who has shown a high level of willingness to lie persistently and in formal situations about such serious matters.” (Id.).
The DHSS discharged Gilooly based on its good faith and well founded belief that he made false statements, and not “because he has opposed” an unlawful employment practice or “because he has made a charge, testified, assisted, or participated in any manner” in an investigation under Title VII, as the scope of those clauses is defined today by the court. Therefore, I would affirm the judgment of the district court.

. The first ground listed by the DHSS in its termination letter involved statements made by Gilooly in an internal grievance hearing. The hearing was triggered by an internal grievance filed by Gilooly, and was conducted independent of the investigation of Gilooly’s complaint filed with the Missouri Commission on Human Rights (MCHR), a designee of the Equal Employment Opportunity Commission. (Appellant’s App. 93). Gilooly's conduct in the grievance hearing, therefore, was governed only by the opposition clause. See Vasconcelos, 907 F.2d at 113.

.The second and third grounds listed by the DHSS in its termination letter involved statements made by Gilooly in his MCHR complaint and to an investigator from the DHSS's Office of Civil Rights, who was assigned to conduct an investigation in light of Gilooly's complaint to the MCHR. (Appellant's App. at 93-94, 180). These statements likely should be analyzed under the participation clause. See Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1352-53 (11th Cir.1999) (holding that statements made to internal investigator of employer were made in an investigation "under this subchapter’' where investigation was pursuant to a charge filed with EEOC); Abbott v. Crown Motor Co., 348 F.3d 537, 543 (6th Cir.2003).

. The Eleventh Circuit in Total System Services limited its holding on this point to cases arising under the opposition clause, but that court was bound by precedent holding that even false statements were protected activity under the participation clause. 221 F.3d at 1175 (citing Pettway, 411 F.2d at 1007). Our court today rejects that view, and concludes instead that false statements in an EEOC investigation can be grounds for dismissal. Ante, at 740.

. In explaining its conclusion, the Board reasoned:
[I]t does not make sense for two different women, one who since March 2001 was patching up her marriage, to engage in a coordinated detailed fictional account of *745 their relationships if [Gilooly] had only been friends with them. Their responses are extreme for two women who have simply misunderstood [Gilooly’s] helpfulness and sympathetic ear. Their reactions are more typical of people who had been romantically and sexually involved. Moreover, [Gilooly's] repeated explanation that the women were psychotic and delusional is not backed up by any objective evidence, medical or otherwise.
(J.A. 146).