942 So.2d 986 (2006)
Michelle Lee HINTON, Appellant/Cross-Appellee,
v.
SUPERVISION INTERNATIONAL, INC., Appellee/Cross-Appellant.
No. 5D05-2522.
District Court of Appeal of Florida, Fifth District.
December 1, 2006.
*987 N. James Turner, of N. James Turner, Esq., P.A., Orlando, for Appellant/Cross-Appellee.
Marc P. Ossinsky of Ossinsky & Cathcart, P.A., Winter Park, for Appellee/Cross-Appellant.
PALMER, J.
Michelle Lee Hinton appeals the final judgment entered by the trial court in favor of Supervision International Inc., following the entry of the trial court's order granting Supervision's motion for entry of a judgment notwithstanding the verdict (JNOV). Concluding that Supervision's post-trial motion was improperly granted, we reverse and remand for reinstatement of the jury's verdict.
*988 When reviewing an order granting a JNOV, an appellate court views the evidence in the light most favorable to the non-moving party, resolves all conflicts in the evidence in favor of the non-moving party, and construes every reasonable conclusion which may be drawn from the evidence in favor of the non-moving party. Russell v. KSL Hotel Corp., 887 So.2d 372 (Fla. 3d DCA 2004). Entry of a judgment notwithstanding the verdict is appropriate only in situations where there is no evidence upon which a jury could rely in finding for the non-moving party. Id.
Hinton initially filed a complaint against Supervision alleging claims of sexual harassment and retaliation in violation of The Florida Civil Rights Act, Chapter 760 of the Florida Statutes. Hinton later amended her complaint by dropping her claim for sexual harassment, thereby making her claim of retaliation, pursuant to section 760.10(7) of the Florida Statutes, the sole basis of her lawsuit.
A jury trial was held on Hinton's amended complaint. Prior to trial, both parties stipulated to the following facts:
1) Hinton started working for Supervision in approximately February of 1997.
2) The last position that Hinton held with Supervision was that of production expediter.
3) The Charge of Discrimination filed by Hinton with the Florida Commission on Human Relations claiming that she had been sexually harassed was faxed to Supervision on September 2, 2003, at approximately 3:00 p.m.
4) Hinton was terminated from her employment with Supervision on September 2, 2003, at approximately 4:20 p.m.
Reviewing the trial transcript in the light most favorable to Hinton reveals the following facts testified to at trial. In March of 2003, Hinton had a discussion with Timalin Hayes, the human resources director at Supervision, regarding Hinton's complaint of sexual harassment by Mike Vega, a coworker. Hinton told Hayes that Vega touched her inappropriately and that she asked him to stop but he refused. Hinton stated that Vega was grabbing her knee, grabbing her, asking her in Spanish to kiss him, running his fingers up her side, running his fingers through her hair, hiding in the women's bathroom to scare her, and on one occasion picking her up over his shoulder. A meeting was held with Vega and Hayes to discuss Hinton's complaint. Vega was upset that Hinton reported him to human resources. Vega told Hinton that she was crazy and that he never did what she accused him of doing. However, at the conclusion of the meeting, Vega apologized for his conduct. Hinton told Hayes that she thought she could still continue to work in the same department with Vega. Hayes told Hinton that she was going to have Vega written up by their supervisor, Roy Archer. When Hinton discovered that Archer never wrote Vega up regarding Hinton's complaints of sexual harassment, she was upset and felt her complaints had been pushed under the rug. Brad Kingstone, the CEO of Supervision, had a meeting with Hinton and Hayes. During the meeting, Kingstone assured Hinton that everything would be taken care of and that if she had any other problems she should contact him. After later reviewing the minutes of the meeting, Hinton became upset because Kingstone wrote in the minutes that he thought she was exaggerating her complaints. Hinton told Kingstone that there were other female employees that had been sexually harassed by Vega. Hinton wanted to prove to Kingstone that Vega had engaged in a pattern of sexually harassing female employees and that she was not exaggerating *989 her claims against him. Kingstone became very angry with Hinton and told her she was wasting his time and that she had no right to be talking to other employees about this issue. Kingstone told Hinton that if she came to him with anything else about sexual harassment, he would fire her. Later that day, Hinton was written up by Archer for investigating sexual harassment at Supervision. During her meeting with Archer, Kingstone came in and started screaming at Hinton that she was immature, she was disrupting the company, she was wasting their time and she would be fired if she continued talking about sexual harassment. Archer told Hinton to sign the write-up. Hinton refused because she thought it was an act of retaliation against her for bringing new information to Supervision's attention regarding her sexual harassment claim and because the write-up was false. After Hinton received the write-up, she decided to consult legal counsel. On September 2nd, Hinton met with an attorney. She filed her charge of discrimination against Supervision during her consultation with her attorney at around 3:00 p.m. that same day. She returned to work at 4:10 p.m. that afternoon. When she came in the door, another co-worker told her that Kingstone was looking for her and that he was in a rage. Shortly thereafter, Kingstone found Hinton and screamed at her that they needed to talk in the conference room. Hinton did not want to discuss anything with Kingstone because she wanted her lawyer to be present. When she asked Kingstone why he wanted to talk to her for the second time, Kingstone told her to clear out her desk, that she was fired, and he told Hayes to get Hinton out of there. Hinton computed her lost wages to be approximately $35,000.
The jury returned a verdict finding that Hinton was unlawfully terminated in retaliation for filing a charge of discrimination and awarding her $10,000 in damages for back pay.
Thereafter, Supervision moved for a JNOV. The trial court granted the motion and entered judgment against Hinton.
On appeal, Hinton claims that the trial court erred in granting Supervision's JNOV motion. We agree.
Section 760.10(7) of the Florida Statutes provides as follows:
760.10. Unlawful employment practices
* * *
(7) It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.
§ 760.10(7), Fla. Stat. (2003).
In Guess v. City of Miramar, 889 So.2d 840 (Fla. 4th DCA 2005), the Fourth District explained:
Section 760.10(7), Florida Statutes, is virtually identical to its Federal Title VII counterpart, 42 U.S.C. § 2000e-3(a). The FCRA [Florida Civil Rights Act] is patterned after Title VII; federal case law on Title VII applies to FCRA claims. Castleberry v. Chadbourne, Inc., 810 So.2d 1028, 1030 (Fla. 1st DCA 2002). See also Harper v. Blockbuster Entm't Corp., 139 F.3d 1385 (11th Cir. 1998).
Id. at 846 n. 2.
Title VII's retaliation provisions specifically protect two types of activity: opposition *990 and participation. See Equal Employment Opportunity Comm'n v. Total System Services, Inc., 221 F.3d 1171, 1174 (11th Cir.2000). Under its opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." See 42 U.S.C. § 2000e-3(a). Under its participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." See Id.
Here, Hinton claims that her activities were protected by the participation clause of section 760.10(7) of the Florida Statutes. In order for Hinton to establish a prima facie retaliation case, in addition to filing formal charges with the Equal Employment Opportunity Commission (EEOC) or its designated representative, she was required to demonstrate: (1) a statutorily protected expression; (2) an adverse employment action; and, (3) a causal connection between the participation in the protected expression and the adverse action. Russell v. KSL Hotel Corp., 887 So.2d 372 (Fla. 3d DCA 2004). Hinton met all the requirements to demonstrate a prima facie retaliation case. First, Hinton filed a claim with the Florida Commission of Human Relations. Second, she was terminated from her employment after she filed the claim. Third, Hinton was terminated within one hour after the claim was faxed to Supervision, after being previously threatened by Kingstone that she would be fired if she wasted any more of his time with her claim that Vega had engaged in a pattern of sexual harassment. As such, Supervision's motion for JNOV should have been denied.
In granting Supervision's motion, the trial court improperly added an additional requirement to Hinton's burden of proving a prima facie case of retaliation. Specifically, based on the authority of Mattson v. Caterpillar, Inc., 359 F.3d 885 (7th Cir.2004), the trial court concluded that Hinton had the burden of proving that she filed her charge of sexual harassment with the Florida Commission of Human Relations in good faith. The trial court erred in so ruling.
First, Hinton's claim at trial was only on the retaliation claim. Hinton dropped her claim of sexual harassment prior to trial. Thus, the issue of whether Hinton filed her claim of sexual harassment with the Florida Commission on Human Relations in good faith was not relevant to the case.
Second, Hinton's situation can be factually distinguished from Mattson. Specifically, in Mattson a male employee filed a charge with the EEOC claiming that a female supervisor sexually harassed him when her breast brushed against his arm on a single occasion. Mattson, 359 F.3d at 888. Evidence was presented by a co-worker that Mattson's goal in filing his claim was to get the female supervisor "out of here anyway possible." Id. The Seventh Circuit held that the male employee's charges were unreasonable, meritless, and motivated by bad faith. Id. at 892. Unlike Mattson, the trial court in this case stopped short of finding that Hinton filed her complaint maliciously or in bad faith.
However, even if we were to assume arguendo that the trial court was correct that a showing of good faith was an element of Hinton's burden of proof, the jury's verdict in the instant case was supported by evidence or inferences that Hinton filed her claim of retaliation in good faith.
In that regard, accepting, as we must, Hinton's evidence as being true, and interpreting such evidence in the light most *991 favorable to her position, Hinton filed her charge of retaliation because she was written up for bringing to the attention of Supervision evidence that Vega had engaged in a pattern of sexually harassing female employees. Furthermore, when Hinton decided to consult a lawyer who advised her to file a claim against Supervision, she was abruptly fired once Supervision received notice of the claim. This evidence supports the conclusion that Hinton's retaliation claim was submitted in good faith. As a result, Supervision's motion for JNOV should have been denied. Accordingly, we need not reach the issue of whether good faith must be shown in order to prevail on a claim based on the participation clause.[1]
Supervision argues on cross-appeal that, if this court decides to reverse the trial court's order in the main appeal, a new trial on liability and damages is required, contending that the jury's verdict awarding Hinton $10,000 for back pay had no basis in the record. We disagree.
When a trial court denies a motion for new trial, the district court of appeal reviews that determination using an abuse of discretion standard. Wilson v. The Krystal Co., 844 So.2d 827 (Fla. 5th DCA 2003). If the evidence supports an award of damages, the award may not be disturbed by the trial court. Phillips v. Ostrer, 481 So.2d 1241 (Fla. 3d DCA 1986).
Here, the trial court made a pretrial ruling that no evidence of the results of Hinton's unemployment compensation case would be allowed to be presented to the jury. However, at trial, Kingstone testified almost immediately regarding Hinton's unemployment compensation claim.
During deliberations, the jury asked the trial court the following question: "Has the plaintiff been working for the last two years or collected unemployment in that time?" The trial court replied: "You should rely upon your notes and collective recollection of the testimony." Subsequently, the jury found that Hinton suffered compensatory damages of $10,000.
Here, the jury may well have determined that the amount of Hinton's back pay should be reduced because testimony was given at trial that she was receiving unemployment benefits. Therefore, sufficient evidence was presented at trial to support the verdict awarding Hinton $10,000 in back pay.
*992 REVERSED and REMANDED for reinstatement of the jury's verdict.
THOMPSON and TORPY, JJ., concur.
NOTES
[1] Interestingly, the federal circuit courts are not in agreement on the issue of whether a claim under Title VII's participation clause must be filed in "good faith". Some courts have held that charges made under both the opposition clause and the participation clause include a reasonable, good faith requirement. See Mattson. Other federal courts have held that a plaintiff merely has to file a charge with the EEOC, regardless of whether it was filed in good faith or not, to be protected under the participation clause. See Johnson v. University of Cincinnati, 215 F.3d 561 (6th Cir.2000) (holding to establish a claim of retaliation under Title VII's participation clause, plaintiff must make a prima facie case by showing that defendants discharged him because he filed a claim with the EEOC). The Eleventh Circuit has refused to decide whether the requirement of good faith applies to a participation clause claim. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir.1998) (stating: "Because we conclude that the facts of this case, viewed in the light most favorable to Wideman, show that Wideman had a good faith, reasonable basis for filing her charge, we need not decide whether protection from retaliation under the participation clause is conditioned by a good faith, reasonable basis requirement."); also Soto v. Bank of America, NA, 2005 WL 2861116, 10 n. 5 (M.D.Fla. Nov. 1, 2005) (explaining that the court gave Soto the benefit of the doubt on the issue of whether she had a good faith basis for filing her claim and found this element satisfied by the filing of her charge).