MONACO, C.J.
 

 In this appeal we consider whether the trial court erred in granting a directed verdict during a trial in which the appellant, Neina Blizzard, sought damages against her former employer, Appliance Direct, Inc., for sexual harassment and retaliation in accordance with section 760.10, Florida Statutes. Because we conclude that there was sufficient evidence requiring that the case be submitted to the jury, we reverse.
 

 At the times critical to this case Ms. Blizzard worked as a sales associate in the Melbourne facility owned by Appliance Direct. Ms. Blizzard had a relatively long history of employment with Appliance Direct, and generally found the job and work environment to be somewhere between satisfactory and wonderful. Eventually, however, she began to work under the supervision of one Jeff Rock, who was the manager of the Melbourne store.
 

 According to Ms. Blizzard and other employees who testified, Mr. Rock was a “hothead,” whose management style included yelling, screaming and berating her and the other employees around her. Much more troubling was her testimony that Mr. Rock constantly talked about his penis, including graphic descriptions of its size, and his sexual prowess, history, successes and aspirations. He would make lewd comments about female workers and customers, and whinny like a horse when an attractive woman would come into the store. Typical was the testimony of another female worker who said that on a couple of occasions Mr. Rock asked her what type of underwear she was wearing, and would stand inappropriately close to her when she was checking a sales ticket. A third female employee described Mr. Rock as “very unprofessional. Very, very dirty mouthed.” She confirmed that he “constantly” made sexual comments, and described his comments as follows:
 

 He was always like referring to his private parts, quote/unquote, making jokes about his sexual abilities, always bragging about how he was a ladies’ man or whatever, but he was just very dirty mouthed.
 

 This witness also confirmed that he “would always degrade women and was feared by many employees.” At trial Mr. Rock denied making sexual comments, but agreed that if he had discussed his penis, used profanity and asked a female employee about her underwear, that would at least constitute a violation of Appliance Direct’s policies and procedures.
 

 One of the difficulties presented by this case arises out of the fact that according to Ms. Blizzard, Mr. Rock’s sexual comments were not directed to her, nor did he ever touch her or make any sexual advances toward her. She, in fact, was under the impression that he did not like her at all. She did testify, however, about the favors and preferences that Mr. Rock would give to other women who were more receptive to his management style. She said in this respect:
 

 You can blow off whatever. But it was affecting my job personally, yes, because he gave favoritism to the three that went along with it, like unbelievable favoritism. They lived by a whole different set of rules.
 

 
 *925
 
 When someone complained to upper management about Mr. Rock — we do not know whether it was about his running sexual commentary, or about other complaints associated with his management methods, he called a meeting and told his staff:
 

 Somebody here has gone upstairs and complained about me.... I’m here to tell you right now, they don’t care what I do down here ... You salespeople sell $80,000 a month for Appliance Direct. I make them hundreds of thousands a month....Who do you think they are going to get rid of? Me, you, or you?
 

 Mr. Rock then threatened serious repercussions if anyone else complained.
 

 Ms. Blizzard did not complain much. She did talk to a zone manager, but did not tell him that Mr. Rock was making sexual comments. Rather, she discussed his attitude and management style. She said that she asked the zone manager if he knew what was happening in the Melbourne store, but did not go into great detail because she thought he knew what she was talking about. She also discussed her concerns about Mr. Rock in generalities with an acting manager during a period when Mr. Rock was away from the store. She described the acting manager as sympathetic, but not willing to make waves. A similar discussion with an assistant manager had about the same conclusion.
 

 Finally, Ms. Blizzard ran into a woman who worked in the human relations department of Appliance Direct who appeared to be very willing to help. Ms. Blizzard’s employment was concluded the following day, however, before she had the opportunity to meet with her. The end came when Mr. Rock was ranting to another female employee. Ms. Blizzard then told him that she thought he was prejudiced and “don’t like white women.” According to Ms. Blizzard, Mr. Rock fired her on the spot. According to Mr. Rock, she just walked out. Either way, Ms. Blizzard filed suit.
 

 In her two-count complaint Ms. Blizzard sought damages for sexual harassment and for maintenance of a hostile work environment in the first count, and back pay and damages for retaliation in the second count. At the conclusion of the plaintiffs presentation of evidence the trial court granted a motion for directed verdict on both counts. Ms. Blizzard timely appealed.
 

 A motion for directed verdict should be granted only where no view of the evidence, and no view of the inferences drawn from the evidence could support a verdict for the nonmoving party.
 
 Tenny v. Allen,
 
 858 So.2d 1192, 1195 (Fla. 5th DCA 2003);
 
 see also Marriott Int'l, Inc. v. Perez-Melendez,
 
 855 So.2d 624 (Fla. 5th DCA 2003). More specifically, when considering a motion for directed verdict, the court is required to evaluate the testimony in the light most favorable to the nonmoving party, and every reasonable evidentiary inference must be considered in favor of the nonmoving party.
 
 Id.
 
 If there is conflicting evidence or if different reasonable inferences may be drawn from the evidence, then the issue is factual and should be submitted to the jury for resolution.
 
 Marriott Int’l.
 

 Ms. Blizzard’s two causes of action are grounded in section 760.10(7), Florida Statutes (2007), which reads:
 

 It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has
 
 *926
 
 made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.
 

 (Emphasis supplied). Historically this subsection has been divided into the “opposition clause” and the “participation clause.” Both parties agree that Ms. Blizzard’s claim would have to fall under the opposition clause; specifically, that she “opposed any practice which is an unlawful employment practice under this section.” Because this provision of the Florida Statutes is almost identical to its federal counterpart, 42 U.S.C. § 2000e-3(a), Florida courts generally follow federal case law when examining similar state claims.
 
 Hinton v. Supervision Int’l, Inc.,
 
 942 So.2d 986, 989 (Fla. 5th DCA 2006).
 

 Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, in turn, forbids sex-based discrimination that alters the terms and conditions of employment in either of two ways: First, by way of a tangible employment action, such as a demotion, pay reduction or firing; or Second, by creation of a hostile workplace environment caused by sexual harassment that is severe enough to effect an alteration.
 
 Baldwin v. Blue Cross/Blue Shield of Alabama,
 
 480 F.3d 1287 (11th Cir.)
 
 cert. denied,
 
 — U.S. -, 128 S.Ct. 499, 169 L.Ed.2d 341 (2007);
 
 Thornton v. Flavor House Products, Inc.,
 
 105 Fair Empl. Prac. Cas. (BNA) 336 (M.D.Ala.2008). We deal with the latter category here. Ms. Blizzard charged that the alleged harassment gave rise to two causes of action, one for creation of a hostile workplace environment, and the other for retaliation.
 

 A. The Retaliation Claim:
 

 To establish a prima facie case of retaliation under section 760.10(7), a plaintiff must demonstrate: (1) that he or she engaged in statutorily protected activity; (2) that he or she suffered adverse employment actitm; and (3) that the adverse employment action was causally related to the protected activity.
 
 See Harper v. Blockbuster Entm’t Corp.,
 
 139 F.3d 1385 (11th Cir.),
 
 cert. denied,
 
 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998). Once the plaintiff makes a prima facie showing, the burden shifts and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action.
 
 Wells v. Colorado Dep’t of Transp.,
 
 325 F.3d 1205, 1212 (10th Cir.2003). The plaintiff must then respond by demonstrating that defendant’s asserted reasons for the adverse action are pretextual.
 
 Id.
 

 Here, there is sufficient evidence with respect to the first element because Ms. Blizzard asserted that Mr. Rock’s actions constituted sexual harassment, an unlawful employment practice, and because there is some evidence that she brought her objections about his practices to the attention of some of her managers, supervisors and co-workers. The second element, an adverse employment action, is supported by the disputed evidence that she was fired. Finally, the causal relationship element is supported by the fact that she was purportedly fired on the day after she complained to a person from the Human Resources Department of Appliance Direct.
 

 It appears that there was enough evidence brought forward on each element of the retaliation claim to defeat a motion for directed verdict. Accordingly, we conclude that it was error to grant the motion.
 

 B. The Sexual Harassment Claim.
 

 The grounds for a sexual harassment claim under either Title VII of the Civil Rights Act of 1964, or under section 760.10(7), Florida Statutes (2007), can be either a tangible employment action or, as Ms. Blizzard asserts in this case, the
 
 *927
 
 “creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of work.”
 
 Baldwin.
 
 To establish a hostile work environment sexual harassment claim based on harassment by a supervisor, Ms. Blizzard was required to show: (1) that she is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was based on the sex of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable.
 
 Mendoza v. Borden, Inc.,
 
 195 F.3d 1238 (11th Cir.1999),
 
 cert. denied,
 
 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000);
 
 Speedway SuperAmerica, L.L.C. v. Dupont,
 
 933 So.2d 75 (Fla. 5th DCA 2006). Moreover, the “employee must show that the employer knew or should have known of the harassment, and yet failed to take remedial action.”
 
 Natson v. Eckerd Corp., Inc.,
 
 885 So.2d 945, 947 (Fla. 4th DCA 2004) (quoting
 
 Castleberry v. Edward M. Chadbourne, Inc.,
 
 810 So.2d 1028, 1029-30 (Fla. 1st DCA 2002)). The United States Supreme Court has held in this regard that “An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.”
 
 Faragher v. City of Boca Raton,
 
 524 U.S. 775, 777, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).
 

 It is undisputed that Ms. Blizzard established the first element, as she is a female. Appliance Direct argues, however, that she failed to present evidence of the remaining elements. With respect to the second element, Ms. Blizzard contends, and we agree, that there was certainly evidence adduced of the unwelcome nature of Mr. Rock’s conduct because, among other things, she complained to her co-workers, the zone manager and other managers, and to human resources. Likewise, there was ample evidence that the harassment was based on her sex in light of the fact that Mr. Rock verbally offered sexually explicit descriptions, talked extensively about his penis and sexual prowess, made sexually suggestive sounds (whinnying like a horse), and by showing favoritism to women who flirted with him. She argues, as well, that his propensity to commit sex-based harassment was demonstrated by evidence that he sexually harassed two other female employees. Thus, her evidence satisfies the third element. It is the fourth and fifth elements that give us pause.
 

 The fourth element of a cause of action for harassment required Ms. Blizzard to produce evidence that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment. In this connection we note that the “severe or pervasive” part of the fourth element includes both a subjective and an objective component.
 
 Mendoza,
 
 195 F.3d at 1246. Thus, Ms. Blizzard would have to show not only that she subjectively perceived the harassment to be sufficiently severe or pervasive to violate both the federal and state statutes, but also from an objective point of view that her perception was reasonable.
 
 Jennings v. Univ. of North Carolina,
 
 482 F.3d 686, 695 (4th Cir.),
 
 cert. denied,
 
 — U.S. —, 128 S.Ct. 247, 169 L.Ed.2d 147 (2007);
 
 Id.
 
 We are satisfied that the testimonial evidence concerning the constancy of the crude, sexually laden remarks and boorish behavior of Mr. Rock
 
 *928
 
 that was patently degrading to women was at least sufficient to have a jury consider whether the ambient workplace atmosphere was severe or pervasive, both from a subjective and objective point of view.
 
 See Gallagher v. C.H. Robinson Worldwide, Inc.,
 
 567 F.3d 263 (6th Cir.2009).
 

 Finally, there is the fifth element — that there is a basis for holding the employer liable. Appliance Direct properly underscores one of the perceived fundamental weaknesses in Ms. Blizzard’s case; that the remarks and actions of her supervisor were not specifically directed to her. Ms. Blizzard posits, on the other hand, that her evidence demonstrated how pervasive the harassment was, and how she was essentially swept up in its backwash. Thus, we are faced with the knotty question of whether harassment in the form of offensive language can be “based on” Ms. Blizzard’s membership in a protected group, even when she was not the target of the language, and even though other employees were equally exposed to it.
 

 Fortunately, we have the benefit of the case of
 
 Jennings,
 
 which answers this very question.
 
 [1]
 
 We note that this case was not brought to the attention of the trial judge at the time that he directed the verdict. The United States Court of Appeals for the Fourth Circuit examined the issue that currently confronts us in light of a number of race discrimination cases, such as
 
 Spriggs v. Diamond Auto Glass,
 
 242 F.3d 179 (4th Cir.2001).
 
 Spriggs
 
 held that racially offensive language need not necessarily be targeted at the plaintiff in order to support a claim of hostile workplace environment. We find ourselves in agreement with the
 
 Jennings
 
 holding, particularly where, as here, the offensive conduct was by the employee’s supervisor.
 
 Cf., Abeita v. TransAmerica Mailings, Inc.,
 
 159 F.3d 246, 252 (6th Cir.1998).
 

 Accordingly, we conclude that the trial court erred in granting a directed verdict with respect to both counts of Ms. Blizzard’s claim. There was, we conclude, sufficient evidence to have this case considered by the jury. We, therefore, reverse and remand for a new trial.
 

 REVERSED and REMANDED.
 

 GRIFFIN and ORFINGER, JJ., concur.
 

 [1]
 

 . We also take note of the case of
 
 Reeves v. C.H. Robinson Worldwide, Inc.,
 
 525 F.3d 1139, 1145 (11th Cir.2008),
 
 reh’g en banc granted, vacated by
 
 569 F.3d 1290 (11th Cir.2009), which likewise concludes that the activity involved in a hostile work environment claim does not require the plaintiff herself to be targeted. As the Eleventh Circuit has vacated its opinion in order to consider the case
 
 en banc,
 
 however, we do not rely on it, even though we agree with its reasoning.