**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0800n.06

No. 10-5649

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 30, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| RHONDA THEUS, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GLAXOSMITHKLINE, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| **Defendant-Appellee,** | ) | |
| | ) | |
| and | ) | **O P I N I O N** |
| | ) | |
| MICHAEL SMITH, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**Before: DAUGHTREY, MOORE, and MCKEAGUE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Rhonda Theus ("Theus")

appeals from a district court order granting summary judgment in favor of Defendant-Appellee

GlaxoSmithKline ("GSK") as to Theus's claims of sexual harassment, retaliatory termination, and

intentional infliction of emotional distress. For the following reasons, we **AFFIRM** the district

court's judgment.

**I. BACKGROUND**

Theus began working for a predecessor of GSK in August 1998 and became a GSK employee

around July 2001. In early 2007, Theus started an online adult business that involved publishing

nude photos and engaging in live video broadcasts. Her coworkers eventually found out, and by July of 2007, Theus started to experience problems at work.

Theus claims that the problems constituted sexual harassment. On October 3, 2007, in a meeting with Todd Russell, GSK's Human Resource Advisor, Theus complained that her coworkers teased her, they joked about putting a nail under her tire, two female coworkers had called her "bitch, whore, and slut," a female coworker had threatened to fight her, several coworkers had followed her home, and several coworkers had teased her regarding her fiancé. R. 29, Ex. 2 (Russell Decl. at ¶ 10).[1] Theus told Russell that this made her "angry with her co-workers." *Id.*

Following the meeting, Russell investigated Theus's claims by interviewing at least seven of her coworkers. None of her coworkers corroborated any of her statements. Several female coworkers told Russell that Theus had called them similar names, other coworkers observed Theus deliberately bumping into them at work or trying to, and some coworkers had overheard Theus threaten others with physical violence. Following the investigation, Russell took no action against either Theus or her coworkers.

---

[1]Theus claims that she reported additional conduct at her initial meeting with Russell, including allegations that certain male coworkers sexually propositioned her and touched her inappropriately. However, at her deposition, Theus denied ever reporting such conduct to GSK. R. 34, Ex. A-1 (Theus Dep. at 138:20-140:2). We therefore find no genuine issue of fact with respect to what she reported to GSK, even if the underlying conduct is still in dispute. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . .").

On October 31, 2007, Theus again approached Russell to complain that her coworkers were continuing to talk about her and follow her home. Russell did not conduct any additional investigation at this time, but recommended she call the police if people followed her home and gave her information about GSK's Employee Assistance Program ("EAP").[2] GSK has various policies intended to combat harassment and discrimination at work. Each new employee receives a hard copy of its Harassment-Free Policy, which prohibits various forms of harassing or discriminating behavior, and GSK makes an electronic copy available on the intranet. The policy requires supervisors to report allegations of harassment to HR and specifically provides a mechanism for bypassing a harassing superior by encouraging employees to contact HR directly or to utilize the Corporate Compliance Helpline. Employees are required to participate in training sessions about unlawful harassment and discrimination, and Theus admits she received the policy and attended a training. R. 29, Ex. 2 (Russell Decl. at Ex. A, B).

On November 11, 2007, Theus took a medical leave of absence. Theus returned to work around March 24, 2008, at which point Michael Smith first became her immediate supervisor. By the first week of April, Russell had received complaints both from Theus and about Theus. Theus complained to Smith that someone had broken into her locker and that her coworkers followed her home after work. Smith twice emailed his supervisors, Scott Martin and Troy Hudson, to report her complaint, as well as several complaints he had received from coworkers that Theus had pushed them into lockers and made statements about guns. Smith's supervisors contacted Russell in HR,

---

[2]The record does not state the purpose of EAP or what it does.

3

and the four of them met to discuss the complaints. In response to these complaints, Russell initiated another investigation, and Theus was placed on administrative leave pending its completion.

This time, Russell interviewed at least eleven of Theus's coworkers, as well as Theus herself and Smith. Again, none of them corroborated Theus's statements. Theus identified two coworkers in particular, Pulliam and Reeves, as particularly trustworthy and able to corroborate her claims, and neither of them confirmed her story. Pulliam told Russell that Theus had said to her that "these people need to leave me alone before I hurt somebody out here." R. 29, Ex. 2 (Russell Decl. at ¶ 27) (alterations omitted). Three of Theus's other coworkers reported hearing Theus make the statement "[i]f any of these whores fuck with me, I am going to go to my car and get my pistol and blow their ass away." *Id.* at ¶ 22. Others reported overhearing Theus mention keeping a gun in her truck and reported that Theus was continuing to yell and curse at coworkers, intentionally bump into them, and stare at them in a menacing way. When Russell interviewed Theus, she claims she identified two incidents that took place on April 7, 2008, before she was placed on administrative leave: 1) a female coworker had intentionally bumped into her shoulder, and 2) a male coworker had followed her, observed her being pulled over by the police, and told everyone at work about it.

Following his investigation, Russell determined that there was substantial evidence that Theus violated GSK's Employee Conduct Policy and Violence-Free Workplace Policy. Russell consulted with GSK's legal department and senior HR employee and decided to terminate Theus's employment as of April 25, 2008. Russell did not consult with either Smith or his supervisors, Hudson and Martin, in making the decision to terminate Theus.

Theus filed suit in state court on April 7, 2009, against GSK and Michael Smith, claiming that her coworkers—and for the first time her supervisor, Michael Smith—sexually harassed her at work and that she was fired for complaining about it. She also claimed for the first time that her coworkers had propositioned her for sex, spread false sexual rumors about her, and offered to pay her for sex, and that two specific coworkers touched her in inappropriate ways. Finally, she alleged intentional infliction of emotional distress and assault and battery.

Regarding her supervisor, Michael Smith, Theus alleges that between March 24, 2008, and April 5, 2008, Smith "propositioned" her to do special favors for him in return for a better position at the company,[3] that Smith regularly commented about her body, threw kisses at her, brushed his body against her, winked at her, asked her out, and once bumped his butt into hers. Theus admits she never reported any of this conduct to anyone at GSK. R. 34, Ex. A-3 (Theus Dep. at 284:9-12).

After removal to federal court, GSK and Smith moved for summary judgment, which the district court granted on all claims.[4] Theus appeals the order on all claims except for assault and battery.

---

[3]GSK points out, and Theus does not dispute, that the "proposition" was not for sexual favors as the term may imply. R. 46 (Def.'s Reply at 12). According to GSK, Theus stated at her deposition that Smith offered to help her get a better position if she assisted him by working on certain production lines.

[4]Prior to granting summary judgment, the parties stipulated to dismiss all claims against defendant Michael Smith with prejudice. He takes no part in this appeal.

## II.  STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment.  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and relief may be granted as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "an absence of evidence to support the nonmoving party's case."  *Moore*, 8 F.3d at 339 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Upon making this showing, the burden shifts to the nonmoving party to go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  All inferences are drawn from the evidence in the light most favorable to the nonmoving party, *Moore*, 8 F.3d at 340, but the nonmoving party must show more than a mere scintilla of evidence to survive.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.  SEXUAL HARASSMENT CLAIM

The Tennessee Human Rights Act ("THRA") prohibits discriminating against an employee on the basis of "race, creed, color, religion, sex, age or national origin."  Tenn. Code Ann. § 4-21-401(a)(1).  The district court held that Theus's claims were not time-barred, but the defendants were entitled to summary judgment because Theus failed to establish a prima facie case of sexual harassment.  We affirm on both grounds.

## A. Plaintiff's Claims Are Timely

The district court correctly held, consistent with Tennessee law, that if one act contributing to the hostile environment occurred within the limitations period, the court could consider the entire duration of the hostile environment. R. 54 (D. Ct. Order at 10-11); *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884, 889 (Tenn. 1996), *overruled in part on other grounds by Booker v. Boeing Co.*, 188 S.W.3d 639, 648 (Tenn. 2006).[5] Theus filed her complaint on April 7, 2009. Because two incidents relating to the alleged pattern of harassment occurred on or after April 7, 2008, the district court properly considered all of her claims.

## B. Prima Facie Case for Sexual Harassment

A prima facie case of sexual harassment under the THRA is the same as under Title VII. *Allen v. McPhee*, 240 S.W.3d 803, 812 (Tenn. 2007), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010). To establish liability for coworker harassment, the plaintiff must show that "(1) the employee is a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew, or should have known of the harassment and failed to respond with prompt and appropriate corrective action." *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn.

---

[5]Tennessee courts generally interpret the THRA in harmony with the relevant federal statutes. *Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 172-73 (Tenn. 1999). Although one exception is the statute of limitations, the differences are not applicable here. *See Booker v. Boeing Co.*, 188 S.W.3d 639, 648 (Tenn. 2006) ("THRA's statute of limitations [Tenn. Code Ann. § 4-21-311(d)] is fundamentally different than Title VII's statute of limitations.").

1996). When the harassment is by a supervisor, the fifth element of employer liability is vicariously imposed, but the employer has the benefit of an affirmative defense. *See Carr v. United Parcel Serv.*, 955 S.W.2d 832, 838 (Tenn. 1997) (holding elements of supervisor hostile environment claim same as coworker hostile environment claim), *overruled in part by Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 176 (Tenn. 1999) (modifying *Carr* to conform with federal law on issue of employer liability in supervisor hostile environment cases). We assume that Theus has made a prima facie showing with respect to the first four elements and agree with the district court that Theus has failed to establish a basis for imposing employer liability.[6]

### 1. Employer Liability for Coworker Hostile Work Environment Claim

An employer will be liable for coworker liability only if it "knew or should have known of the harassment, *and* failed to take prompt and appropriate remedial action." *Campbell*, 919 S.W.2d at 32. Theus fails the first requirement as her complaints were not sufficient to put GSK on notice that Theus was discriminated against on the basis of her gender. Although Theus reported animosity or even threatening behavior from her coworkers, the only behavior Theus reported to GSK that even plausibly implicates the THRA is the use of gender-based epithets. Even if this were sufficient notice, GSK's response to these concerns—initiating an investigation and interviewing numerous coworkers in an effort to ascertain the full nature of the problem—satisfies the second requirement.

---

[6]The district court held that Theus also failed to demonstrate the third element that the harassing behavior was due to her gender. We do not endorse the district court's analysis with respect to this element, and, for purposes of this opinion, we assume Theus satisfied the third element of the prima facie case.

An employer must "take steps 'reasonably calculated' to terminate the harassment" and "respond[] appropriately based on the available information." *Id.* at 33. The level of action expected of GSK depends on the information it has or should have available. *See, e.g.*, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 341-42 (6th Cir. 2008) (requiring more than investigating and separating the complainant when company knew of serial harasser and inappropriate prior management response). Here, however, Theus's reported complaints were significantly less severe than the sexual incidents complained of by the plaintiff in *Hawkins*. Under these circumstances, GSK's response was reasonable. *See Campbell*, 919 S.W.2d at 33.

## 2. Employer Liability for Supervisor Hostile Work Environment Claim

An employer will automatically be liable for sexual harassment by supervisors. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005). When the supervisor does not cause the victim to experience a tangible employment action, employers still have an affirmative defense if they can show "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and [] that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Allen v. McPhee*, 240 S.W.3d 803, 812 (Tenn. 2007) (internal quotation marks omitted), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010). Here, Theus did experience a tangible employment action—she was fired. However, Theus does not assert that Smith

took any part in that decision.[7]  R. 29 (Defs.' Statement of Facts at ¶ 38); R. 41-2 (Pl.'s Resp. to

Statement of Facts) (no dispute of ¶ 38).  Therefore, we will consider the affirmative defense.

The first element involves evaluating both "whether the employer exercised reasonable care

to prevent sexual harassment and whether it exercised reasonable care to correct sexual harassment

that had already occurred."  *Allen*, 240 S.W.3d at 814.  Starting first with failure to correct, Theus

does not dispute that she never reported or complained to GSK about harassment from her supervisor

Smith.  R. 34, Ex. A-3 (Theus Dep. at 284:9-12).  Therefore, it cannot be said that GSK failed to

correct alleged supervisor harassment when none was alleged.  *See Clark*, 400 F.3d at 349-50

(rejecting affirmative defense because although policy existed, several supervisors failed to

implement it).  GSK has also established that it took reasonable care to prevent sexual harassment

by having a written, properly disseminated anti-harassment policy, which contained procedures for

bypassing a supervisor.  R. 29, Ex. 2 (Russell Decl. at Ex. A, B).  *See Allen*, 240 S.W.3d at 816 ("It

is widely accepted that the existence of an anti-harassment policy weighs heavily in favor of a

---

[7]Cases discussing the affirmative defense suggest that the only relevant inquiry is the existence of a tangible employment action, not whether the supervisor took it or influenced it.  *See, e.g.*, *Allen*, 240 S.W.3d at 814 ("[T]he affirmative defense is available whenever no tangible employment action is taken against the employee.") (internal quotation marks omitted); *Parker*, 2 S.W.3d at 176 ("The defending employer may raise the affirmative defense . . . when no tangible employment action has been taken.").  However, these cases apply this broadly worded standard by seeing if the supervisor's harassment "culminated" in the tangible employment action.  *Parker*, 2 S.W.3d at 176.  For example, in *Allen*, the court considered "whether McPhee [the supervisor] took or instigated a tangible employment action against Allen [the plaintiff]."  240 S.W.3d at 814.  Both parties accept the premise that the supervisor must be involved in the adverse action for the affirmative defense to be unavailable.

conclusion that an employer has exercised reasonable care to prevent harassment."); *see also*

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).

The second element is whether Theus failed to take advantage of the available preventive and corrective measures. Theus does not deny her failure; rather, she argues she should be excused because she had a "credible fear" that her complaints would not be taken seriously or would lead to retaliation. Appellant Br. at 11. A credible fear, however, is more than mere speculation of retaliation or "subjective belief in the futility of complaining." *Allen*, 240 S.W.3d at 817-18. Unlike in *Allen*, where the harasser's involvement in the decision making process was written into the policy in question, 240 S.W.3d at 818, GSK's policy provides for the circumvention of any supervisor. Theus's statements that she believed everything she reported to Smith would not get resolved or that Smith told her he was tired of her complaints, Appellant Br. at 11, are insufficient to amount to a credible fear that reporting *Smith's* harassing behavior to HR would not be taken seriously or would lead to retaliation. *See Thornton v. Fed. Express Corp.*, 530 F.3d 451, 457 (6th Cir. 2008). GSK has properly established that Theus failed to take advantage of the available procedures to report Smith's conduct, and Theus has not created a genuine issue of fact regarding a credible fear.

## IV. RETALIATORY DISCHARGE CLAIM

Theus also appeals the district court's grant of summary judgment in favor of GSK on her retaliation claim. Retaliation claims under the THRA also follow Title VII. To maintain a claim, Theus must establish: 1) she engaged in activity protected by the THRA; 2) GSK knew she was engaging in the protected activity; 3) GSK took a materially adverse action against her; and 4) there

was a causal connection between the protected activity and the materially adverse action. *Allen*, 240 S.W.3d at 814; *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). Theus bears the burden of setting out a prima facie case of retaliation. Upon doing so, the burden of production shifts to GSK to offer a non-discriminatory reason for the adverse action. The burden of production then shifts back to the plaintiff, who must produce evidence that the reason is a pretext and "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd*, 552 F.3d at 502.[8]

Theus does not dispute that Russell terminated her employment upon the completion of his investigation and deemed her in violation of various violence-in-the-workplace policies. R. 29 (Defs.' Statement of Facts at ¶¶ 36-37); R. 41-2 (Pl.'s Resp. to Statement of Facts) (no dispute of ¶¶ 36-37). Although Theus disputes that she ever made the underlying threats reported to Russell, she does not argue that such threats of violence as reported to an employer would be insufficient to justify termination. Rather, she argues that her termination could not have been actually motivated by these acknowledged complaints because Theus herself complained of workplace violence against her coworkers and none of those coworkers were terminated for violating the same policy.

---

[8]The Tennessee Supreme Court recently held that the Tennessee rules regarding summary judgment, which are stricter than the federal rules, are generally not amenable to disposing of claims under the *McDonnell Douglas* framework at the summary judgment stage. *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 (Tenn. 2010). GSK argues this is a procedural rule that has no impact on the application of the traditional summary judgment standard in federal court, and as Theus makes no argument to the contrary, we will treat it as procedural for the purposes of this appeal. *See also Gossett*, 320 S.W.3d at 794 n.4 (Clark, J., dissenting in part and concurring in part) (arguing federal courts would continue to apply *McDonnell Douglas* framework on summary judgment).

Although plaintiffs may demonstrate pretext by pointing to similar situations treated differently, the situations here are not "sufficiently similar to raise an implication of pretext." *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 272-73 (6th Cir. 2007). The reports that GSK received regarding Theus involved the potential for the ultimate form of workplace violence—retrieving a gun and killing a coworker. Theus has not presented any evidence that when faced with a similar threat of violence by others, GSK took no action. Because we agree with the district court that Theus has failed to produce any evidence to establish that GSK's proffered non-discriminatory reason is a pretext, we need not consider whether she has made out a prima facie case. *See Ladd*, 552 F.3d at 502 (declining to consider prima facie case when no evidence of pretext).

## V. TORT CLAIM

The district court also granted summary judgment against Theus on her claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress under Tennessee law, Theus must establish that "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997) (internal quotation marks omitted). An employer may be liable for its employees' infliction of emotional distress "if its corporate supervisors and officials engage in conduct that rises to the level of reckless disregard of outrageous conduct." *Pollard v. E.I. Dupont De Nemours, Inc.*, 412 F.3d 657, 665 (6th Cir. 2005).

13

Tennessee law defines "outrageous" using the Restatement (Second) of Torts. *Bain*, 936 S.W.2d at 622-23. Conduct is outrageous if it is "so extreme in degree, as to go beyond all bounds of decency, and [is] regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 623 (internal quotation marks omitted). Even if the conduct alleged in Theus's complaint could be deemed outrageous, the lesser conduct reported to GSK could not. Theus never reported harassment by her supervisor, and she never reported the most severe of the alleged inappropriate sexual conduct, such as the physical touching or propositions for sex. Additionally, unlike in *Pollard* where the employer "stood idly by," 412 F.3d at 664, GSK's undisputed reaction to the reports was to initiate two separate investigations, each time interviewing all the relevant players. The district court correctly concluded that Theus failed to set forth facts in support of her claim of intentional infliction of emotional distress against GSK.

## VI. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's grant of summary judgment in favor of the defendant.